OPINION OF THE COURT
Per Curiam.
Order entered December 23, 1998 insofar as appealed from reversed, with $10 costs, and the third-party defendant’s cross motion for summary judgment is granted. The clerk is directed to enter judgment in favor of third-party defendant dismissing the third-party complaint.
The underlying negligence action stems from allegations that plaintiff, while employed as a “front-end” supervisory cashier at a Waldbaum supermarket, became ill upon being exposed to “toxic” fumes from a floor cleaning compound identified in the record as “Speed Track”. Plaintiff alleges that at the time of the occurrence — approximately 2:00 a.m. on April 8, 1988 — she was standing about three or four feet away from two employees of defendant and third-party plaintiff Pro-Tek Maintenance System, Inc. (Pro-Tek), who were in the process of mixing the Speed Track solvent with another (unidentified) liquid. Plaintiff claims that she developed an “instant headache” when she was “hit” by and inhaled fumes from the chemical admixture, which produced a “very strong,” “chemical smelling” odor similar to that of ammonia.
Pro-Tek denied liability for plaintiff’s injuries, and impleaded both the manufacturer and distributor of Speed Track (parties not involved on this appeal), as well as the owner and operator of the store premises, third-party defendant-appellant Waldbaum Supermarkets, Inc. In its third-party action against Waldbaum, Pro-Tek alleged variously that Waldbaum failed to provide plaintiff with a safe place to work; failed to close the supermarket premises “so that [Pro-Tek] could provide * * * janitorial services;” failed to properly ventilate the store premises; and, finally, that Waldbaum itself created “noxious and unwholesome fumes” within the premises. This last allegation apparently was bottomed on Pro-Tek’s claim that Waldbaum failed to timely or properly clean a “large spill” of “laundry detergent and ammonia” observed in one of the supermarket aisles approximately 75 feet away from the area in which plaintiff was stationed, as early as 10:30 p.m. on April 7, 1988, or roughly 3V2 hours before plaintiff became ill.
No basis is shown on the voluminous record presented on appeal to impose liability in the third-party action upon Wald *815 baum. “Where the alleged defect or dangerous condition arises from the contractor’s methods and the owner exercises no supervisory control over the operation, no liability attaches to the owner pursuant to the common law or section 200 of the Labor Law.” (Dilena v Reisman Irrevocable Trust, 263 AD2d 375, 376.) There is no indication in this record, either in the numerous deposition transcripts submitted or otherwise, that Waldbaum had any supervisory control over Pro-Tek’s selection or use of the Speed Track cleaning agent alleged to have caused the plaintiffs injuries. Nor are genuine triable issues raised by Pro-Tek’s unsupported, conclusory allegations that the store premises was inadequately ventilated, or by its speculative assertion that the real cause of plaintiffs injuries was the vaguely described detergent spill seen elsewhere in the supermarket — a condition remote in time and location to the rapidly developing adverse reaction experienced by plaintiff. Only a genuine issue will defeat summary judgment. “ ‘A shadowy semblance of an issue’ ” will not suffice (Capelin Assocs. v Globe Mfg. Corp., 34 NY2d 338, 341, quoting Hanrog Distrib. Corp. v Hanioti, 10 Misc 2d 659, 660).
The dissent takes the position that there is a factual issue as to “the source of the fumes.” The plaintiff testified at deposition that she had an immediate reaction to the “chemical smell” when the cleaners mixed the two chemicals three or four feet away, that she left the area and when she returned the “Fumes were still in there, contained in that area. I started coughing, tearing, my throat felt like it was tightening up.” (Record on appeal, at 247.)
It is sheer speculation to argue that an alleged ammonia spill 75 feet away caused plaintiffs condition, particularly when the condition recurred when she returned to the area of the fumes caused by the cleaners. Even assuming that Pro-Tek could establish notice of the alleged ammonia which might come from a container which fell from a store shelf, it is unexplained how a common household product would suddenly cause such a reaction from 75 feet away to the plaintiff and not to other employees, and why it recurred at the accident site when the plaintiff returned. The instantaneous reaction of the plaintiff to the cleaners mixing the commercial cleaning substance at most four feet away and her seeing the fumes rules out any other cause as a matter of law and common experience.
The theory of plaintiffs case is that only Pro-Tek caused her condition. Pro-Tek can be relieved of liability at the trial by *816 proving that it was the ammonia spill and. not its chemicals that caused the plaintiffs reaction. Stated differently, if plaintiff proves its case against Pro-Tek there could be no claim over. If plaintiff cannot prove its case against Pro-Tek the same result would follow.